Filed 12/1/15  Certified for publication 12/23/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARCUS CRAWLEY,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ALAMEDA COUNTY WASTE MANAGEMENT AUTHORITY,<br><br>        Defendant and Respondent;<br><br>GARY WOLFF, as Executive Director, etc., et al.,<br><br>        Real Parties in Interest and Respondents. | A143650<br><br>(Alameda County Super. Ct. No. RG14734577) |

The Alameda County Waste Management Authority (Authority) imposed a $9.55 annual charge on all households within Alameda County for disposal of household hazardous waste by enactment of ordinance No. 2014-1, entitled "An Ordinance Establishing a Household Hazardous Waste Collection and Disposal Fee" (the Ordinance).  Plaintiff Marcus Crawley, proceeding in propria persona, challenged the Ordinance via a petition for a writ of mandate or administrative mandamus (Code Civ. Proc., §§ 1085, 1094.5).  Crawley argued that the fee constituted an assessment under article XIII D of the California Constitution (article XIII D), requiring approval by a majority of the electorate pursuant to section 4.  In the alternative, Crawley contended the fee was not imposed in compliance with the requirements of article XIII D, section 6. The trial court sustained the Authority's demurrer without leave to amend.  On appeal,

1

Crawley renews some of the above arguments and raises new ones. The trial court properly concluded Crawley's petition failed to state a cause of action and we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

The Authority is a joint powers authority formed under California law (Gov. Code, § 6500 et seq.). On December 18, 2013, the Authority proposed "a fee for collection and disposal at the four [household hazardous waste] facilities in Alameda County of the [household hazardous waste] component of garbage and refuse generated by Alameda County Households." The proposed annual fee of $9.55 on each county household, beginning July 1, 2014, and ending June 30, 2024, would fund the facilities operating as part of the county's sanitation system. The Authority set a public hearing for February 26, 2014, to consider the proposed fee. The Authority's executive director was directed to prepare a report describing each parcel of real property with one or more households that would be subject to the Ordinance, the number of households on each parcel, and the amount of the proposed charge for each parcel.

In advance of February 26, 2014, the Authority's executive director mailed to each record owner of the subject properties a written notice of the proposed annual fee, its purpose, and the opportunity to protest the fee.[2] Specifically, the notice reads: "This letter is to inform you that the [Authority] will consider adopting a fee of $9.55 per year

---

[1] The material facts are derived from Crawley's allegations and documents we may judicially notice. (Evid. Code, § 452, subds. (b), (c) [judicial notice may be taken of "[r]egulations and legislative enactments issued by or under the authority of . . . any public entity in the United States" and "[o]fficial acts of the legislative, executive, and judicial departments of . . . any state of the United States"]; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6; *Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 174, fn. 2; *1119 Delaware v. Continental Land Title Co.* (1993) 16 Cal.App.4th 992, 996, fn. 2; *Long Beach Equities, Inc. v. County of Ventura* (1991) 231 Cal.App.3d 1016, 1024.)

[2] We grant the Authority's unopposed request for judicial notice of its notice to property owners. We may take judicial notice of the notice as the Authority's official act. (Evid. Code, § 452, subd. (c); *Commercial Union Assurance Co. v. City of San Jose* (1982) 127 Cal.App.3d 730, 740.)

per residential unit, collected through the property tax roll, at its meeting on February 26, 2014. . . . [¶] Revenue from the fee will be used to support the countywide household hazardous waste program, which provides safe, legal, environmentally sound collection and disposal services for residential household hazardous waste such as paint, solvents and pesticides. The fee will support expanded services to all residents of Alameda County. Without these services, most household hazardous waste will be illegally and improperly disposed of (e.g., abandoned on streets, poured down drains, placed in garbage or recycling carts). Improper disposal is often dangerous, litters our streets and sidewalks, and can detract from residential property values."

On January 22, 2014, the Authority extended the protest hearing date to March 26, 2014, and mailed notice of the extended protest hearing date to each record owner. The extension provided 45 days' notice to certain property owners to whom the original mailing had inadvertently been delayed. The resolution also provided that the Authority would not adopt the Ordinance if "written protests . . . are presented by either (i) a majority of the owners of the identified parcels subject to the ordinance or (ii) the owners of a majority of the residential units subject to the ordinance."

On March 26, 2014, the Authority held its hearing and considered protests of the Ordinance. Neither a majority of the owners of affected parcels nor the owners of a majority of the affected households protested the Ordinance. On May 28, 2014, the Authority adopted the Ordinance by a two-thirds vote of its governing body.

Thereafter, Crawley—an Alameda County homeowner and taxpayer—filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5), as well as an ex parte petition for alternative writ of mandate. He argued that the Authority abused its discretion by failing to adopt the Ordinance pursuant to a majority vote of the electorate, as allegedly required by article XIII D. The trial court denied the ex parte application for an alternative writ of mandate and ordered the Authority to answer Crawley's petition. Respondents—the Authority and real parties in interest Gary Wolff, Don Biddle, and Richard Taylor (the Authority's executive director, president, and general counsel, respectively)—instead demurred to Crawley's petition, asserting the petition failed to

3

state facts sufficient to constitute a cause of action because article XIII D, section 6, exempts refuse collection fees from a voter ratification requirement. Crawley filed a motion to strike the demurrer, which was considered as an opposition.

The trial court granted respondents' demurrer and dismissed Crawley's action. The trial court's order states: "[T]he court finds that Section 4 [of Article XIII D] does not apply to the adoption of the household hazardous waste fee at issue here because the fee is a 'property related fee' subject to the requirements of Article XIII D, section 6. (See, e.g., *Howard Jarvis Taxpayers Assn. v. City of Roseville* (2002) 97 Cal.App.4th 637, 642–645.) [Crawley] has not alleged any facts or presented any legal argument demonstrating that the Ordinance imposed a 'special benefit assessment' that would be subject to Article XIII D, section 4. . . . [¶] [Crawley] also alleges that [the Authority's] adoption of the Ordinance violated Section 4 because the agency did not require a public vote by ballot. However, the household hazardous waste fee imposed by the Ordinance is a fee for refuse collection. (See [Health & Saf. Code, §§] 4740 [defining 'refuse,' in part, as 'anything thrown away as worthless']; 25218.1(e) [defining household hazardous waste as 'waste generated incidental to owning or maintaining a place of residence'].)[3] Article XIII D, section 6(c) specifically exempts fees for refuse collection services from the requirement that a new fee or charge be submitted and approved by a majority of property owners." Crawley filed a timely notice of appeal.

## II. DISCUSSION

Crawley contends that the trial court erred in sustaining respondents' demurrer. Specifically, he disputes the trial court's determination that the Ordinance involved imposition of "a property-related fee or charge" and the protest procedure was in compliance with article XIII D, section 6.[4]

---

[3] Undesignated statutory references are to the Health and Safety Code.

[4] We do not address arguments Crawley raises for the first time in his reply brief. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4; *Tilton v. Reclamation Dist. No. 800* (2006) 142 Cal.App.4th 848, 864, fn. 12.)

4

A petitioner can obtain writ relief, pursuant to Code of Civil Procedure section 1085, upon a showing of " '(1) A clear, present and usually ministerial duty on the part of the respondent . . . ; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty . . . .' " (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539–540.)  In contrast, "[t]he inquiry for the issuance of a writ of administrative mandamus [(Code Civ. Proc., § 1094.5)] is whether the agency in question prejudicially abused its discretion . . . .  [Citations.]  A prejudicial abuse of discretion is established if the agency has not proceeded in a manner required by law . . . ." (*San Franciscans Upholding the Downtown Plan v. City and County of San Francisco* (2002) 102 Cal.App.4th 656, 673–674.)  Crawley has not shown he can state a viable claim for mandamus under any theory.

A.    *Standard of Review*

We review questions of law and constitutional construction de novo.  (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 836; *California Chamber of Commerce v. Brown* (2011) 196 Cal.App.4th 233, 248–249.)  Similarly, "[o]n appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo:  we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.  [Citation.]  First, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  Next, we treat the demurrer as admitting all material facts properly pleaded.  Then we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citations.] [¶] We do not, however, assume the truth of contentions, deductions, or conclusions of law." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439–440.)  If the allegations in the complaint conflict with the facts included in exhibits attached to or referenced in the complaint, "we rely on and accept as true the contents of the exhibits.  However, in doing so, if the exhibits are ambiguous and can be construed in the manner suggested by plaintiff, then we must accept the construction offered by plaintiff." (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83; accord, *Satten v. Webb* (2002) 99 Cal.App.4th 365, 375.)

We are "not bound by the trial court's construction of the complaint." (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 958.) Rather, we independently evaluate the complaint, construing it liberally. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) However, "[the appellant] has the burden to show either that the demurrer was sustained erroneously or that the court abused its discretion in sustaining the demurrer without leave to amend." (*Pinnacle Holdings, Inc. v. Simon* (1995) 31 Cal.App.4th 1430, 1434–1435.) "[A]lthough we use a de novo standard of review . . . , we do not transform into a trial court. . . . Instead, the appellant must frame the issues for us, show us where the superior court erred, and provide us with the proper citations to the record and case law. ' " '[D]e novo review does not obligate us to cull the record for the benefit of the appellant. . . . As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error . . . by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.' " ' " (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913.)

B.      *Proposition 218*

"In 1996, California voters passed Proposition 218, which added articles XIII C and XIII D to the California Constitution. The initiative was intended to close perceived loopholes in the restrictions on property taxes imposed by Proposition 13. (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles, supra,* 24 Cal.4th at pp. 838–839; *Howard Jarvis Taxpayers Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 681.) Articles XIII C and XIII D 'allow[] only four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge.'[5] [Citation.] Article XIII C imposes restrictions on general and special property taxes in addition to those imposed under article XIII A, and requires voter approval for any general or special tax imposed by a local governmental entity. The second component of

---

5 As used in Articles XIII C and XIII D, "fee" and "charge" are synonymous. (*Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 214, fn. 4.) Like our high court, we use the terms interchangeably. (*Ibid.*)

6

Proposition 218, article XIII D, is addressed to 'Assessment and Property-Related Fee Reform,' and it 'undertakes to constrain the imposition by local governments of "assessments, fees and charges." (Art. XIII D, § 1.)' [Citation.] 'Article XIII D sets forth procedures, requirements and voter approval mechanisms for local government assessments, fees and charges.' " (*Paland v. Brooktrails Township Community Services Dist. Bd. of Directors* (2009) 179 Cal.App.4th 1358, 1365, fns. omitted .)

In Article XIII D, section 6, subdivision (c), our constitution provides: "Voter Approval for New or Increased Fees and Charges. *Except for fees or charges for sewer, water, and refuse collection services*, no property related fee or charge shall be imposed or increased unless and until that fee or charge is submitted and approved by a majority vote of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area. The election shall be conducted not less than 45 days after the public hearing." (Italics added.) " 'Proposition 218 also imposes substantive limitations, including restrictions on the use of revenues derived from such charges.' " (*Griffith v. Pajaro Valley Water Management Agency* (2013) 220 Cal.App.4th 586, 597.) "Section 6 [of Article XIII D] provides that revenues derived from the fee cannot exceed the funds required to provide the property-related service. (§ 6, subd. (b)(1).) The funds arising from the fees may not be used for any purpose other than that for which the fee was imposed. (§ 6, subd. (b)(2).) The amount of the fee imposed on any parcel or person as an incident of property ownership cannot exceed the proportional cost of the service attributable to the parcel. (§ 6, subd. (b)(3).) No fee may be imposed for a service unless that service is actually used by, or immediately available to, the owner of the property in question. (§ 6, subd. (b)(4).) A fee may not be imposed for general government services where the service is available to the public at large in substantially the same manner as it is to property owners. (§ 6, subd. (b)(5).)" (*Morgan v. Imperial Irrigation Dist., supra,* 223 Cal.App.4th at p. 908.) "In any legal action contesting the validity of a fee or charge, the burden shall be on the agency to demonstrate compliance with this article." (Art. XIII D, § 6, subd. (b)(5).)

7

Section 4 of article XIII D imposes more stringent requirements for the imposition of an "assessment." " 'Assessment' means any levy or charge upon real property . . . for a special benefit conferred upon the real property . . . ." (Art. XIII D, § 2, subd. (b).) Article XIII D further defines " '[s]pecial benefit' " as "a particular and distinct benefit over and above general benefits conferred on real property located in the district or to the public at large. . . ." (*Id.*, § 2, subd. (i).) Our Supreme Court has explained the requirements for the imposition of an assessment: "A local public agency may not impose an assessment, . . . unless: (1) the agency identifies 'all parcels which will have a special benefit conferred upon them and upon which an assessment will be imposed' (art. XIII D, § 4, subd. (a)); (2) the agency obtains an engineer's report that supports the assessment (*id.*, § 4, subd. (b)); (3) the assessment does not exceed the reasonable cost of the proportional special benefit conferred on the affected parcel (*id.*, § 4, subds. (a) & (f)); and (4) after giving notice to affected property owners and holding a public hearing, the agency does not receive a majority protest based on ballots 'weighted according to the proportional financial obligation of the affected property' (*id.*, § 4, subds. (c)–(e))." (*Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 418 (*Richmond*).)

C.    *Analysis*

Crawley has abandoned his argument that the $9.55 fee is a "special benefit" assessment that requires compliance with Article XIII D, section 4. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["[i]ssues not raised in an appellant's brief are deemed waived or abandoned"].) However, Crawley insists that the trial court erred in concluding the Authority's adoption of the Ordinance did not violate Article XIII D.

First, Crawley challenges the trial court's conclusion that the Ordinance imposes a "property-related service" fee. "Proposition 218 restricts 'the power of public agencies to impose a " '[f]ee' or 'charge,' " defined as any "levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person *as an incident of property ownership*, including a user fee or charge for a property-related service." ([Article XIII D, § 2, subd. (e)].)' " (*Griffith v. Pajaro Valley Water Management Agency, supra,* 220 Cal.App.4th at p. 594, some italics omitted.) The

phrase "[p]roperty-related service" is defined to mean "a public service *having a direct relationship to property ownership*." ([Article] XIII D, § 2, subd. (h), italics added.) "Property ownership is defined broadly to include 'tenancies of real property where tenants are directly liable to pay' the fee in question. ([*Id.*], § 2, subd. (g).)" (*Howard Jarvis Taxpayers Assn. v. City of Fresno* (2005) 127 Cal.App.4th 914, 918.)

Crawley contends that the household hazardous waste collection service has no direct relationship to property ownership because it is not "delivered directly" to residential property. He asserts, in his opening brief, that a property owner or tenant will instead have to himself deliver household hazardous waste to one of the Authority's collection facilities. However, the Ordinance does not state as much on its face and Crawley has alleged no facts to support his assertion. And, even if we assume that Crawley could amend to state such facts, Crawley cites no authority suggesting this single factor is determinative.

Crawley's reliance on *Howard Jarvis Taxpayers Assn. v. City of Roseville, supra,* 97 Cal.App.4th 637 (*City of Roseville*) is misplaced. In that case, the court held a percentage-based "in-lieu franchise fee" imposed by a municipality upon private utilities (water, sewer, and refuse collection services) and paid by ratepayers was a property-related service fee. (*Id.* at pp. 638, 642, 647.) The court reviewed the relevant municipal code sections, including the municipal code section relating to refuse collection, which provided: " 'Each and every *householder or tenant* occupying any dwelling, house, or residence, shall pay to the city . . . a fixed minimum charge . . . as a refuse fee. Such fixed minimum is based upon service of one (1) call per week, irrespective of whether there is any refuse to remove from any premises.' " (*Id.* at p. 644, fns. omitted & italics added.) The court nonetheless determined that the in-lieu franchise fees "direct the provision of water, sewer, and refuse services to (owned) property. These services are first necessarily delivered to property, and then, and only then, to those living or working on the property. This recognized dichotomy discounts any argument that water, sewer, and refuse services delivered to a tenant are not property-related, that is, not directly tied to property ownership." (*Id.* at p. 644.) The court concluded: "[T]he in-lieu [franchise]

9

fee for Roseville's water, sewer, and refuse services, a fee not dependent upon the quantity of service used, is a fee imposed upon a parcel or upon a person as an incident of property ownership for Proposition 218 purposes." (*Id.* at pp. 644–645, fn. omitted.)

*City of Roseville, supra,* 97 Cal.App.4th 637 does not stand for the proposition that "property-related services" must be physically delivered to the property. In fact, authority from our high court suggests that direct delivery is just one of many factors to be considered.

In *Richmond, supra,* 32 Cal.4th at page 427, our Supreme Court concluded that "[a] fee for ongoing water service through an existing connection is imposed 'as an incident of property ownership' because it requires nothing other than normal ownership and use of property. But a fee for making a new connection to the system is not imposed 'as an incident of property ownership' because it results from the owner's voluntary decision to apply for the connection." (*Ibid.*; see *Bighorn-Desert View Water Agency v. Verjil, supra,* 39 Cal.4th at p. 217 ["domestic water delivery through a pipeline is a property-related service"].) The court explained: "In the ballot pamphlet for the election at which article XIII D was adopted, the Legislative Analyst stated that '[f]ees for water, sewer, and refuse collection service probably meet the measure's definition of property-related fee.' (Ballot Pamp., Gen. Elec. (Nov. 5, 1996), analysis of Prop. 218 by Legis. Analyst, p. 73.) The Legislative Analyst apparently concluded that water service has a direct relationship to property ownership, and thus is a property-related service within the meaning of article XIII D because water is indispensable to most uses of real property; because water is provided through pipes that are physically connected to the property; and because a water provider may, by recording a certificate, obtain a lien on the property for the amount of any delinquent service charges [citations]. . . . [¶] . . . [¶] [A] water service fee is a fee or charge under article XIII D if, but only if, it is imposed 'upon a person as an incident of property ownership.' (Art. XIII D, § 2, subd. (e).)" (*Richmond, supra*, 32 Cal.4th at pp. 426–427.)

Here, we agree with the trial court that the Ordinance's fee for the collection of household hazardous waste is imposed "as an incident of property ownership" because,

by the Ordinance's own terms, it is imposed on "each household in Alameda County." The Authority also found, in enacting the Ordinance, that "vacant [h]ouseholds also require household hazardous waste collection and disposal in connection with property improvements, maintenance, or landscaping." Thus, the fee requires nothing other than normal ownership and use of property. (See *Howard Jarvis Taxpayers Assn. v. City of Fresno, supra,* 127 Cal.App.4th at pp. 925–926, & fn. 3 [adopting same test and concluding imposition of fee on renters does not defeat because "article XIII D broadly defines ownership to include rental interests"].)

"Household" is defined by the Ordinance to include apartment and condominium units. But unlike *City of Roseville,* the Ordinance states: "Nothing in this Ordinance is intended to prevent an arrangement . . . under which payment for garbage and refuse collection and disposal service is made by residents of a household who are not the . . . owners thereof. However, any such arrangement *will not affect the property owner's obligation* should such payments not be made." (Italics added.) "Fees for water and sewer services (and refuse collection services) . . . are not automatically liens, but become a lien on the owner's property only at the option of the district when delinquent and a certificate of delinquency is recorded. ([Gov. Code,] § 61115, subd. (c).)" *Paland v. Brooktrails Township Community Services Dist. Bd. of Directors, supra,* 179 Cal.App.4th at pp. 1369–1370, italics omitted.)

We are not persuaded by Crawley's assertion that the fee is not incidental to property ownership because household hazardous waste "can . . . accumulate on the property for years or even decades without detriment to the property or community." The Legislature specifically rejected that notion when it found "[a]bandonment or illegal disposal of household hazardous waste . . . and the continued disposal of those wastes into the solid waste stream is a threat to public health and safety and to the environment." (§ 25218, subd. (d).) Furthermore, section 25218.1, subdivision (e), specifically defines "household hazardous waste" as "hazardous waste generated *incidental to owning or maintaining a place of residence.* Household hazardous waste does not include waste generated in the course of operating a business concern at a residence." (Italics added.)

11

Having concluded that the Ordinance imposes a "property-related service fee," the next question we must answer is whether the "refuse collection" exception in section 6, subdivision (c), applies. With respect to a proposed property-related service fee, " '[Proposition 218] requires the proposing agency to identify parcels upon which it will be imposed, and to conduct a public hearing. [Citation.] The hearing must be preceded by written notice to affected owners setting forth, among other things, a "calculat[ion]" of "[t]he amount of the fee or charge proposed to be imposed upon each parcel . . . ." [Citation.] If a majority of affected owners file written protests at the public hearing, "the agency shall not impose the fee or charge." [Citation.] Moreover, *unless the charge is for* "*sewer, water,* [*or*] *refuse collection services*," "no property-related fee or charge shall be imposed or increased unless and [it] is submitted and approved by a majority vote of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area." ' " (*Griffith v. Pajaro Valley Water Management Agency, supra,* 220 Cal.App.4th at p. 594.) Crawley argues, for the first time on appeal, that the exception does not apply because household hazardous waste is not "refuse," but instead "recyclable material." Crawley's petition does not include any such allegation. In any event, the premise is flawed.

First, contrary to Crawley's suggestion, the Health and Safety Code makes clear that not all household hazardous waste is recyclable. (See §§ 25218, subd. (e) ["[i]t is the shared responsibility of citizens, conditionally exempt small quantity generators, disposal facility operators, hazardous waste processors, manufacturers, sellers, solid waste handlers, and state and local agencies to ensure the proper recycling and disposal of household hazardous waste"]; 25218.1, subd. (f) ["[h]ousehold hazardous waste collection facilities include [inter alia] permanent household hazardous waste collection facilities. . . , temporary household hazardous waste collection facilities . . . , recycle-only household hazardous waste collection facilities"]; 25218.1, subd. (n) [" '[r]ecycle-only household hazardous waste collection facility' means a household hazardous waste collection facility that . . . accepts for recycling only recyclable household hazardous waste materials"]; 25218.1, subd. (m) [" '[r]ecyclable household hazardous waste

12

material' " means latex paint, used oil, used oil filters, antifreeze, spent lead-acid batteries, and household hazardous waste "that is designated as a universal waste"].) If all household hazardous waste was recyclable, as Crawley suggests, there would be no need for further definition of " 'recyclable household hazardous waste.' "

Even if household hazardous waste is recyclable, the program nonetheless comes within the plain meaning of "refuse collection services." " 'The principles of constitutional interpretation are similar to those governing statutory construction.' [Citation.] The aim of constitutional interpretation is to determine and effectuate the intent of those who enacted the constitutional provision at issue. [Citation.] To determine that intent, we begin by examining the constitutional text, giving the words their ordinary meanings." (*Richmond, supra,* 32 Cal.4th at p. 418.) " 'Courts construe constitutional phrases liberally and practically; where possible they avoid a literalism that effects absurd, arbitrary, or unintended results.' " (*Id.* at p. 419.)

"Refuse collection services" are not defined in Article XIII C, section 6. However, "[r]efuse" is defined by section 4740, in the article providing county sanitation district powers, to "include all of the following: (a) animal, fruit and vegetable refuse; (b) offal; (c) leaves and cuttings, trimmings from trees, shrubs and grass; (d) inorganic refuse and rubbish; (e) garbage; (f) *anything thrown away as worthless.*" (Italics added.) This understanding is consistent with the plain meaning of refuse. (Merriam-Webster (2015) <http://www.merriam-webster.com/dictionary/refuse> [as of Dec. 1, 2015] [refuse defined as "[t]he worthless or useless part of something" or "TRASH, GARBAGE"]; accord, § 6406 [" '[g]arbage' . . . shall include all of the following: (a) animal, fruit and vegetable refuse; (b) offal; (c) leaves and cuttings, trimmings from trees, shrubs and grass; (d) inorganic refuse and rubbish; (e) anything thrown away as worthless"]; Gov. Code, § 38790 [" '[g]arbage' includes: [¶] . . . [¶] (e) Anything thrown away as worthless"].)

The Authority will not be collecting anything but what has been thrown away as worthless. The Ordinance itself states that it "prescribes a fee for collection and disposal at the four [household hazardous waste] facilities in Alameda County of the [household

13

hazardous waste] component of garbage and refuse generated by Alameda County Households." It is inherent in the act of disposing of or depositing household hazardous waste for collection that the household hazardous waste is no longer of value to the property owner. (See *In re Pedrosian* (1932) 124 Cal.App. 692, 699 ["[w]hen refuse has been deposited for collection as rubbish by the owner, it may be regarded as abandoned by him"].) The trial court did not err in concluding the "refuse collection" exception in Article XIII D, section 6, subdivision (c), applies.

We reject, as did the trial court, Crawley's assertion that the Authority violated Article XIII D, section 6, in its consideration of protests. Crawley's primary argument is that the protest procedure employed set an unreasonably high bar for a successful protest of the Ordinance by requiring a majority of owners of *both* the 388,943 parcels *and* the 565,566 residential units subject to the Ordinance. The record cited by Crawley (minutes of the Mar. 26, 2014 public meeting at which the protests were considered) fails to support his position and in fact clearly shows otherwise. In its January resolution, the Authority indicated "[it] *shall not* adopt the ordinance" if "written protests against the proposed ordinance are presented *by either* (i) a majority of the owners of the identified parcels subject to the ordinance *or* (ii) the owners of a majority of the residential units subject to the ordinance." At the March 26, 2014 public meeting, the Authority's executive director, in announcing the tabulation of protest votes, reiterated that "by law and the Board's procedures resolution, if there are 50% protests by *either* the record owners of parcels potentially subject to the fee, *or* the number of total residential units on parcels that protested, the fee cannot be adopted. Since there was not a 50% protest by *either* criteria, the Board has the discretion to adopt or not adopt the fee." (Italics added.) There is no prejudice to Crawley in the Authority having set a lower bar for successful protest than required by our Constitution. (See Art. XIII D, § 6, subd. (a)(2) ["[i]f written protests against the proposed fee or charge are presented by a majority of owners of the identified parcels, the agency shall not impose the fee or charge"].) We are not persuaded that the Authority decreased the likelihood that a majority protest would prevent the Ordinance's adoption.

Nor can we construe the Constitutional language to support Crawley's argument that section 6 of Article XIII D requires that there be affirmative written consent from property owners in excess of the number of protests. He suggests section 6, subdivision (a)(2), means that "[i]f written protests against the proposed fee or charge are presented by a majority of owners *over written approval of the consenting owners*, the agency shall not impose the fee or charge." The statutory language is not reasonably susceptible to this interpretation. (See *Williams v. Superior Court* (1993) 5 Cal.4th 337, 357 ["[i]t is not the province of courts 'to insert what has been omitted' "]; Code Civ. Proc., § 1858.) Because the Authority did not receive protests from a majority of either group, the Ordinance was properly approved by a two-thirds majority of the Board.

Crawley also contends that the Authority failed to provide required notice of the reason for the fee. For new or increased property-related fees, a detailed notice must be mailed to affected property owners, explaining the proposed fee and the manner of its calculation, "the reason for the fee," and "the date, time, and location of a public hearing on the proposed fee." (Art. XIII D, § 6, subd. (a)(1).) The Authority's notice met these requirements. Crawley points to no authority supporting his assertion that, in such a notice, the Authority was also required to cite section 4740 or explain the basis for its position that household hazardous waste is refuse.

Finally, we reject Crawley's position that the Authority had no power to adopt the fee.[6] "If authorized by their legislative or other governing bodies, two or more public agencies by agreement may jointly exercise *any power common to the contracting parties*." (Gov. Code, § 6502, italics added.) "The test for compliance with the common powers rule is whether each of the agency's members had the power to perform the contested acts—whether each had the power 'to do unilaterally what was actually done.' " (*Robings v. Santa Monica Mountains Conservancy* (2010) 188 Cal.App.4th 952, 962.)

---

[6] In his petition, Crawley specifically alleged the Authority has the power to levy fees.

Crawley has not shown any basis to dispute that the Authority's member agencies—Alameda County, each city within Alameda County, and the Castro Valley and Oro Lomo Sanitary Districts—are each authorized to adopt such a fee. (§§ 5471, subd. (a) ["*any entity* shall have power, by an ordinance approved by a two-thirds vote of the members of the legislative body thereof, to prescribe, revise and collect, fees . . . or other charges for services . . . in connection with its water, sanitation, storm drainage, or sewerage system" (italics added)]; 5470, subd. (e) [" '[e]ntity' means and includes *counties*, cities and counties, *cities, sanitary districts*, county sanitation districts, county service areas, sewer maintenance districts, and other public corporations and districts authorized to acquire, construct, maintain and operate sanitary sewers and sewerage systems" (italics added)].)

The trial court correctly determined that the Ordinance did not violate Proposition 218 as a matter of law and did not err in sustaining the demurrer. Nor did the trial court abuse its discretion in refusing leave to amend.

### III. DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.


_____
BRUINIERS, J.


WE CONCUR:


_____
SIMONS, Acting P. J.


_____
NEEDHAM, J.


16

Filed 12/23/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARCUS CRAWLEY,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>ALAMEDA COUNTY WASTE MANAGEMENT AUTHORITY,<br><br>     Defendant and Respondent;<br><br>GARY WOLFF, as Executive Director, etc., et al.,<br><br>     Real Parties in Interest and Respondents. | A143650<br><br>**ORDER DENYING PETITION FOR REHEARING AND CERTIFYING OPINION FOR PUBLICATION**<br><br>(Alameda County<br>Super. Ct. No. RG14734577) |

**THE COURT:**[*]

     Appellant's petition for rehearing is denied. The opinion in the above-entitled matter filed on December 1, 2015, was not certified for publication in the Official Reports. Good cause appearing, this court grants the requests for publication by appellant and respondent Alameda County Waste Management and orders the opinion certified for publication pursuant to California Rules of Court, rule 8.1105(b), (c).

Date:_____  _____ Acting P.J.

_____

     [*] Before Simons, P.J., Needham, J. and Bruiniers, J.

Superior Court of Alameda County, No. RG14734577, Brenda F. Harbin-Forte, Judge.

Marcus Crawley, in pro. per., for Plaintiff and Appellant.

Shute, Mihaly & Weinberger, Ellison Folk and Joseph D. Petta for Defendant and Respondent, and Real Parties in Interest and Respondents.