Filed 4/21/16  Clever Hospitality v. Patel CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CLEVER HOSPITALITY, INC. et al., | B264921 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC530043) |
| BHUPENDRAKUMAR M. PATEL et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County. Robert L. Hess, Judge.  Affirmed.

The Dressler Law Group, Thomas W. Dressler, for Plaintiffs and Appellants.

Paul R. Rosenbaum for Defendants and Respondents.

\*     \*     \*

The owner of a hotel grants a prospective buyer a 60-day option to buy the hotel, during which time the buyer can conduct its due diligence and, if interested, exercise the option by depositing $150,000 into escrow. The buyer spends time and money conducting due diligence, but never makes the deposit. When the hotel owners thereafter sell the hotel to someone else, the buyer and its real estate agent sue the owners for breach of contract and related claims. The trial court dismissed the buyer's claims. On appeal, the buyer and agent argue that the buyer's due diligence efforts either rendered the option irrevocable or substituted for the deposit as the means of exercising the option. We disagree and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

We draw these facts from the operative Second Amended Complaint (SAC) and from the exhibits attached to it. (*Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 403-404 (*Crawley*).)

In December 2012, defendants Buhpendrakumar M. Patel and Hasaben B. Patel (collectively, the Patels), as trustees of the B. Patel Family Trust dated February 13, 1991 (the Trust), signed a "Purchase and Sale Agreement" (Agreement) with plaintiff Clever Hospitality, Inc. (Clever). Under that Agreement, the Patels agreed to sell Clever the Gilbert Hotel, a hotel on Wilcox Avenue in Los Angeles, for $8,528,000. Plaintiff Kenneth Heller (Heller) was to act as the real estate broker, and was to receive a commission of $338,000 "[u]pon the Close of Escrow."

The sale was not to happen immediately. Instead, the Agreement granted Clever a 60-day "due diligence" period during which Clever could evaluate the Hotel and either agree to consummate the sale by depositing $150,000 into escrow or decide to terminate the Agreement for any reason. To facilitate Clever's due diligence, the Agreement gave Clever the right to enter the physical premises; to inspect and review the Patels' financial and other records for the Hotel, including "all agreements, advance bookings, leases, licenses and permits for operation of the Hotel"; and to perform at its own expense "such surveys, marketing, zoning, inspections, tests, studies and investigations as [it] deems

2

appropriate." The Agreement also obligated the Patels to make their records available for inspection and review. The Agreement specifically provided that "if the Deposit is not paid . . . on or before the expiration of the Due Diligence Period, [it] shall be terminated without further notice or demand."

The parties agreed that the due diligence period would begin on January 7, 2013. Clever "expended substantial funds, and long hours of work" conducting its due diligence. Because the Hotel was in a "deteriorated condition" and served as "cheap lodging for transients," Clever spent money on "architectural and renovation evaluation and planning." Clever also asked the Patels for access to the Hotel's "occupancy records" in order to assess the feasibility of shutting the Hotel down for any renovations; the Patels did not disclose those records despite "numerous requests" to do so.

On February 25, 2013, Clever asked for an extension of the due diligence period. The Patels never agreed to an extension, but also "never stated or indicated that they would terminate the [Agreement] at the expiration of the original, unextended due diligence period." Notwithstanding the Patels' silence, Clever did not deposit any money into escrow prior to March 8, 2013—the 60th day after the due diligence period started.

In an email dated March 12, 2013, the Patels (through their attorney) indicated that the Agreement had expired due to the nonpayment of the deposit. Thereafter, the Patels and their adult son made somewhat inconsistent statements to Clever regarding the sale of the Hotel: They frankly acknowledged that they were talking to other buyers, but also indicated that they would provide Clever with the occupancy records and expressed a "willingness" and "wish" to proceed with the sale to Clever. All communications stopped in the summer of 2013, when the Patels sold the Hotel to someone else.

## II.     Procedural History

Clever and Heller sued the Patels and the Trust. Specifically, Clever sued for breach of contract and Heller sued for intentional interference with his real estate commission contract with Clever. The Patels and the Trust demurred and moved to strike the SAC as improperly filed.

3

The trial court sustained the demurrer without leave to amend. The court reasoned that Clever's "failure to make the initial monetary deposit into escrow acted to cancel the agreement" and that its "expenditure of funds . . . as part of its due diligence activities" "was of no benefit to and did not con[s]titute consideration." The court denied the motion to strike as moot.

After the trial court entered an order dismissing the complaint, Clever and Heller timely appealed.

## DISCUSSION

In an appeal of an order dismissing a case after sustaining a demurrer without leave to amend, our task is to ascertain "whether the complaint alleges facts sufficient to state a cause of action" under any theory and "whether there is a reasonable possibility that the plaintiff could cure [any] defect with an amendment." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) In undertaking this task, we "must assume the truth of the complaint's properly pleaded allegations" unless they are contradicted by any exhibits attached to the complaint. (*Ibid.*; *Crawley*, *supra*, 243 Cal.App.4th at pp. 403-404.) We review the complaint's sufficiency de novo, and the potential for amendment for an abuse of discretion. (*Schifando*, at p. 1081; *Crawley*, at p. 403.)

## I.      Sufficiency of the Operative Complaint

### A.      *Breach of contract*

To state a claim for breach of contract, Clever must allege "(1) the existence of [a] contract, (2) [its] performance or excuse for nonperformance, (3) [the Patels or the Trust's] breach, and (4) . . . resulting damages." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) A binding, bilateral contract exists only if "'there are mutual promises given in consideration of each other.'" (*Bleecher v. Conte* (1981) 29 Cal.3d 345, 350, quoting *Davis v. Jacoby* (1934) 1 Cal.2d 370, 378; *Sully-Miller Contracting Co. v. Gledson/Cashman Constr. Inc.* (2002) 103 Cal.App.4th 30, 36 ["'mutuality of obligation must exist where the exchange of promises between promisor and promisee is meant to represent the contract's consideration'"].)

4

The Agreement in this case created an "option to purchase property" because the Patels, as the "optioner," "'offer[ed] to sell the subject property at a specified price or upon specified terms and agree[d] . . . [to] hold the offer open for [a] fixed time.'" (*Steiner v. Thexton* (2010) 48 Cal.4th 411, 418 (*Steiner*), quoting *Auslen v. Johnson* (1953) 118 Cal.App.2d 319, 321-322.)  Because only one party to this option (namely, the Patels) made any promises, this "option to purchase property," was, without more, "'a unilateral agreement'"—not an enforceable, bilateral contract.  (*Steiner*, at pp. 418, 420.)

However, an option to purchase property can *become* a binding contract in one of two ways:  (1) the buyer can provide consideration for the option, thereby making the option irrevocable until it expires according to its terms (*C. Robert Nattress & Assocs. v. Cidco* (1986) 184 Cal.App.3d 55, 67 ["'(a)n option supported by consideration is an irrevocable offer, *open for a prescribed period*'"], quoting *Riverside Fence Co. v. Novak* (1969) 273 Cal.App.2d 656, 660; *Steiner*, *supra*, 48 Cal.4th at p. 420 [noting how consideration can render an option "irrevocable for the negotiated period of time"]); or (2) the buyer can exercise the option, thereby ripening the option into a "'mutually enforceable agreement to buy and sell'" the property (*Steiner*, at p. 420; cf. *ibid.* ["an option without consideration is not binding on either party until exercised . . . until then, the option '"is simply a continuing offer which may be revoked at any time"'"]).

As explained below, the option in this case never became a binding contract.

### 1. Option never became irrevocable

Clever admits that it never paid any money to make the Patels' option irrevocable, but asserts that (1) the time and money Clever spent on due diligence constitutes consideration, and (2) the doctrine of promissory estoppel substitutes for consideration. We disagree.

To constitute the consideration necessary to make a revocable option irrevocable, (1) "[t]he promisee [in this case, the buyer] must confer (or agree to confer) a benefit or must suffer (or agree to suffer) prejudice," *and* (2) this "benefit or prejudice '"must actually be bargained for as the exchange for the promise."'" (*Steiner*, *supra*, 48 Cal.4th at pp. 420-421, quoting *Bard v. Kent* (1942) 19 Cal.2d 449, 452; *Orcilla v. Big Sur, Inc.*

5

(2016) 244 Cal.App.4th 982, 1007; *Booth v. Bond* (1942) 56 Cal.App.2d 153, 157; *Parsons v. Cashman* (1913) 23 Cal.App. 298, 301.) A buyer can satisfy this requirement by paying money or by undertaking tasks that the seller bargained for. Thus, in *Steiner*, our Supreme Court held that a buyer's expenditure of time and money to obtain approvals to split a parcel of land for the seller's benefit constituted consideration sufficient to render the seller's three-year option contract irrevocable during the option period. (*Steiner*, at pp. 421-424; accord, *Blonder v. Gentile* (1957) 149 Cal.App.2d 869, 874-875 [contracting party's efforts to stake out mining claims on behalf of other party constituted adequate consideration].) In this case, Clever's due diligence efforts benefitted only itself; the Patels did not ask Clever to do anything and obtained no benefit from Clever's efforts. Thus, Clever surely spent time and money on due diligence but those efforts, even if they qualify as prejudice, were never bargained for; as such, it does not constitute consideration. (Accord, *Steiner*, at p. 422, fn. 11 [noting that "the outcome" in *Steiner* "might have been different had plaintiffs' efforts been exclusively in their own interest"].)

The doctrine of promissory estoppel can sometimes take the place of consideration. (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310; *Joffe v. City of Huntington Park* (2011) 201 Cal.App.4th 492, 513.) The doctrine applies if (1) the party to be estopped has made "'''''"a promise clear and unambiguous in its terms"''''''"; (2) the other party has relied on that promise; (3) that reliance is "'''''"both reasonable and foreseeable"''''''"; and (4) the relying party has been injured by its reliance. (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 416 (*Granadino*).) Clever urges us to apply this doctrine, but does not explain how or when the Patels made a clear and unambiguous promise to make the option irrevocable notwithstanding the Agreement's clear language that the option is revocable.

Further, even if we assume that the option became irrevocable, this only makes the option enforceable according to its terms and the option here expired when Clever did not deposit $150,000 into escrow by the end of the due diligence period. Clever seems to

6

suggest that the option period was extended because Clever asked for an extension and got no response. However, this suggestion is foreclosed both by general contract principles (e.g., *Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 60 ["if it is a new proposal and it is not accepted it amounts to nothing"]), and by the plain terms of the Agreement, which provide that the Agreement terminates "without further notice or demand" upon the expiration of the option period.

### 2. Option never ripened into binding contract to sell

Clever admits that it never satisfied the option's express condition that Clever deposit $150,000 into escrow, but offers two arguments as to why the option nevertheless ripened into a binding contract to sell the hotel: (1) Clever's noncompliance with the deposit condition was excused by the Patels' noncompliance with their duty to provide the occupancy records; and (2) promissory estoppel. We are not persuaded.

The Patels' failure to provide the Hotel's occupancy records does not provide a basis for excusing Clever's noncompliance with the Agreement's deposit requirement because the Patels' promise to provide those records, like the option itself and for the reasons noted above, was unsupported by any consideration. (E.g., *Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1249 ["California courts have repeatedly refused to enforce gratuitous promises, even if reduced to writing in the form of an agreement"].)

The doctrine of promissory estoppel also does not excuse Clever's failure to provide the deposit. As noted above, promissory estoppel applies here only if the Patels made a clear and unambiguous promise to disregard the deposit condition. (*Granadino*, *supra*, 236 Cal.App.4th at p. 416.) Here, they did not. The Patels' statements following the 60-day due diligence period are admittedly murky, evincing *both* a willingness to provide the documents and consummate the sale with Clever *and* a desire to sell to others. What is missing is any promise—let alone a clear and unambiguous promise—to proceed with the sale notwithstanding Clever's noncompliance with the deposit requirement.

7

### B. *Intentional interference with a contract*

To state a claim for intentional interference with a contract, a plaintiff must allege "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55.)

Implicit in these elements is the requirement that the defendants' acts—rather than something else—*cause* the breach or disruption. Thus, "[w]here a broker has seen fit to allow payment of his compensation to be contingent upon performance of a contract between parties other than himself, he cannot complain if, through the nonperformance of that contract, his own contingent rights be lost." (*Cochran v. Ellsworth* (1954) 126 Cal.App.2d 429, 440; *City of Turlock v. Paul M. Zagaris* (1989) 209 Cal.App.3d 189, 193 [same].) In this case, Heller's commission contract was made expressly contingent "[u]pon the Close of Escrow," but it was Clever's failure to exercise the option—not anything the Patels did—that prevented the option from ripening into a contract under which escrow would close.

## II. Reasonable Possibility of Amendment

Clever and Heller offer no grounds upon which the defects we have identified could be cured by further pleading, and we independently discern no such grounds. The trial court accordingly did not abuse its discretion in dismissing the complaint after sustaining the demurrer without leave to amend.

## DISPOSITION

The order of the trial court is affirmed. The Patels and the Trust are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>

_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST

_____, J.
CHAVEZ