Filed 10/21/24  P. v. Roman CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083171 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD292742) |
| JOSHUA ROMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia A. Eyherabide, Judge.  Affirmed.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Laura G. Baggett and Robin Urbanski, Deputy Attorneys General for Plaintiff and Respondent.

# I

# INTRODUCTION

A jury found Joshua Roman guilty of felony child abuse (Pen. Code,[1] § 273a, subd. (a)), after he violently shook his two-month-old son, causing the infant to suffer from life-threatening brain bleeding and spinal injuries. The jury also found true a sentencing enhancement allegation that Roman personally inflicted great bodily injury on his son (§ 12022.7, subd. (d)). The trial court found three aggravating factors to be true, struck the punishment for the great-bodily-injury enhancement, and sentenced Roman to state prison for the midterm of four years.

Roman appeals the judgment of conviction. He contends the trial court improperly violated the ban on dual use of facts when it imposed the midterm for the felony child abuse conviction, rather than the low term. In particular, he claims the court erroneously imposed the midterm based, in part, on two aggravating factors that overlapped with elements of the offense of felony child abuse, the great-bodily-injury enhancement, and the third aggravating factor. We reject this argument and affirm the judgment.

# II

# BACKGROUND

A. *Factual Background*

Roman and A.V. both served in the military. They got married and, a few months later, had a child, E.R. E.R. experienced minor reflux and breathing issues after his birth, but there were no concerns with his overall health or well-being.

One day, when E.R. was two months old, Roman and A.V. learned that neither of them had been "ranked up," or promoted, within the military.

---

[1]     Further undesignated statutory references are to the Penal Code.

After they received this disappointing news, Roman told A.V. to have a relaxing afternoon to herself. A.V. fed E.R. and left the family home at about 4:00 or 4:30 p.m. to enjoy her afternoon alone.

A few hours later, Roman called A.V. and told her she needed to return home immediately because E.R. was nonresponsive. A.V. raced home and told Roman to call 9-1-1. When she got home, E.R. was lying on the floor and Roman was on the phone with 9-1-1. E.R. was nonresponsive and he looked very pale. A.V. rubbed E.R.'s chest and he made grunting sounds. A.V. believed the child was having a seizure.

Paramedics and other first responders arrived at the home shortly after A.V. E.R. was still in distress and lying on the floor. He was not awake, his complexion was gray and ashy, and his body went rigid. The paramedics ran an electrocardiogram test, which confirmed E.R. had a heartbeat, and then transported him to the hospital by ambulance. While en route, E.R.'s body went rigid again and his arms flexed outward. The paramedics administered an antiseizure medication and determined E.R. was experiencing posturing, an abnormal positioning of one's limbs caused by an internal brain injury.

E.R. was treated in the hospital's emergency room trauma bay. He continued to posture and did not respond normally to stimuli. He was administered another antiseizure medication and a medication to prevent a potentially fatal herniation. A CT scan showed E.R. suffered from subarachnoid and subdural brain bleeds.

E.R. was admitted to the hospital's pediatric intensive care unit and diagnosed with traumatic brain injury most likely from nonaccidental trauma, with a risk of cerebral deterioration. CAT scan images showed acute subdural hemorrhaging along the right frontal and temporal lobes of the brain. Other images showed bleeding on the left frontal lobe, bleeding in the

subdural space, and bleeding deep in the brain tissue on both sides of the brain, which was indicative of a high level of trauma. They also showed subarachnoid hemorrhages in the back of the brain, which was consistent with a shaking-type injury. MRI imaging showed abnormal fluid in the spine from bleeding in the head that had tracked down along the back of the spine, causing compression in the spinal cord. E.R. also had extensive retinal hemorrhages in his eyes radiating around the optic nerve out to the periphery in a pattern that was consistent only with nonaccidental trauma, or shaken-baby syndrome.

The hospital's section chief for child abuse pediatrics examined E.R. and reviewed his medical records. Based on her patient examination and review of the medical records, she concluded E.R.'s injuries were caused by nonaccidental trauma.

E.R. was discharged from the hospital four days after he was admitted. At the time of trial, he appeared to be a healthy 13-month-old toddler.

B. *Procedural Background*

The San Diego County district attorney charged Roman by information with one count of felony child abuse in violation of section 273a, subdivision (a). She alleged he personally inflicted great bodily injury on a child under the age of five years within the meaning of section 12022.7, subdivision (d). Further, she alleged three aggravating circumstances— (1) the crime involved great bodily injury (Cal. Rules of Court,[2] rule 4.421(a)(1)); (2) the victim was particularly vulnerable (rule 4.421(a)(3)); and (3) the defendant took advantage of a position of trust or confidence to commit the offense (rule 4.421(a)(11)).

---

2     Further references to rules are to the California Rules of Court.

After a trial, the jury found Roman guilty of felony child abuse and found true the great-bodily-injury enhancement allegation. In a bifurcated proceeding, the court found the prosecution proved all three aggravating circumstance allegations beyond a reasonable doubt. In finding the great-bodily-injury aggravating factor true, the court stated it gave great weight to E.R.'s doctors, who testified that "excessive" and "extreme force" caused the injuries. For the vulnerable-victim aggravating factor, the court stated, "[E.R.] was 2 months old. I don't think the Court needs to say much more in reference to that." With respect to the aggravating factor concerning abuse of a position of trust and confidence, the court opined that Roman was E.R.'s father, Roman took care of E.R., and E.R. "was in his arms[] [and] trusted him."

At sentencing, the court denied probation, struck the great-bodily-injury enhancement, and sentenced Roman to prison for the midterm of four years. Roman filed a timely notice of appeal from the judgment.

III

DISCUSSION

A. *Sentencing Principles*

"The Determinate Sentencing Act has been in effect since 1977 and prescribes the punishment to be imposed in most noncapital felony cases." (*People v. Scott* (1994) 9 Cal.4th 331, 349 (*Scott*).) "Where imprisonment is imposed, the court typically selects a lower, middle, or upper term as the base term for the underlying offense." (*Ibid.*) "An enhancement may be authorized or required depending on the circumstances of the crime." (*Ibid.*) "An enhancement is an additional term of imprisonment added to the base term." (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1517.) Under the Determinate Sentencing Act, the "court often has broad discretion to tailor

5

the sentence to the particular case," including discretion to select the base term and strike or stay certain enhancements. (*Scott*, at p. 349.)

When judgment is imposed and three possible terms of imprisonment are specified, "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except … [¶] … when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1)–(2); see rule 4.420(a), (b).) "In selecting between the middle and lower terms of imprisonment, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Rule 4.420(d).)

"Although a single factor may be relevant to more than one sentencing choice, such dual or overlapping use is prohibited to some extent." (*Scott, supra*, 9 Cal.4th at p. 350.) For example, a court cannot use a single fact "constituting an element of the offense" to aggravate the base term. (*Ibid.*; see rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term."].) The phrase "element of the offense" refers to "an essential component of the legal definition of the crime considered in the abstract." (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1636.) Thus, "where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence." (*People v. Castorena* (1996) 51 Cal.App.4th 558, 562.) In other words, a court may use "facts to aggravate a sentence when those facts establish elements not required for the underlying crime." (*Ibid.*, italics omitted.)

6

Similarly, a court "cannot use a single fact both to aggravate the base term and to impose an enhancement …." (*Scott, supra*, 9 Cal.4th at p. 350.) "[W]hen an appellant claims the trial court made an impermissible dual use of a fact as both an enhancement and an aggravating factor … the reviewing court looks at whether the trial court *could have* based the aggravating factor on evidence *other* than that which gave rise to the enhancement. If so, the sentence may stand." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775.) "[I]f the court has discretion to strike the punishment for the enhancement and does so," the court may also use a fact charged and found as an enhancement as a reason for imposing a particular term. (Rule 4.420(g); *People v. Black* (2007) 41 Cal.4th 799, 808–809 ["The court may not consider any fact that is an essential element of the crime itself [citation] and may not consider a fact charged and found true as an enhancement *unless it strikes the punishment for that enhancement.*"], italics added, superseded by statute on other grounds, as recognized by *People v. Lynch* (2024) 16 Cal.5th 730, 756; see, e.g., *People v. Towne* (2008) 44 Cal.4th 63, 76, fn. 4 ["Because the trial court struck the enhancements that were based upon defendant's prior prison terms, it was free to consider those terms as an aggravating factor."].)

B. *The Trial Court Did Not Violate the Ban on Dual Use of Facts*

Roman's sole contention on appeal is that the trial court violated the ban on dual use of facts when it imposed the midterm for the felony child abuse conviction. Specifically, he argues the court imposed the midterm based on two aggravating factors—the fact the crime involved great bodily harm (rule 4.421(a)(1)), and the victim's particular vulnerability (rule 4.421(a)(3))—that overlapped with an element of the offense of child felony abuse, the great-bodily-injury enhancement, and the third aggravating

factor found true by the court, i.e., Roman's exploitation of a position of trust or confidence to commit the offense.  We are not persuaded.

Section 273a, subdivision (a), the felony child abuse statute, provides, "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years."  (§ 273a, subd. (a).)

The felony child abuse statute is " ' "intended to protect a child from an abusive situation in which the probability of serious injury is great." ' " (*People v. Valdez* (2002) 27 Cal.4th 778, 784 (*Valdez*).)  It defines child abuse to include conduct that " 'can occur in a variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect.' "  (*People v. Odom* (1991) 226 Cal.App.3d 1028, 1032.)  Here, the prosecution proceeded under the theory that Roman was guilty of felony child abuse because, under circumstances or conditions likely to produce great bodily harm or death, he willfully inflicted unjustifiable physical pain on E.R.

Neither of the challenged aggravating factors constituted an element of this offense.  To convict Roman, the jury was required to find that he inflicted unjustifiable *physical pain* on E.R., under circumstances or conditions *likely to produce great bodily harm* or death.  But it was not required to find, as an element of the offense, that he *in fact inflicted great bodily harm* on E.R. (*Valdez, supra*, 27 Cal.4th at p. 784 [" ' "[T]here is no requirement that the

8

actual result be great bodily injury." ' "]; *People v. Lee* (1991) 234 Cal.App.3d 1214, 1220 [" 'Occurrence of great bodily injury is not an element of the offense.' "].) Thus, the court did not err when it aggravated the base term due to the fact Roman caused E.R. to suffer great bodily harm in the form of life-threatening brain bleeding, retinal hemorrhages, and spinal injuries.

The particular vulnerability of the victim is not an element of the offense of felony child abuse either. To prove felony child abuse, the prosecution must establish that the victim is a "child," (§ 273a, subd. (a)), meaning the victim is a person under the age of 18 years old. (See *People v. Thomas* (1976) 65 Cal.App.3d 854, 857.) However, it need not prove the victim is particularly vulnerable. "Case law has explained that for purposes of finding the aggravating factor of particular vulnerability, ' "[p]articularly ... means in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act." ' " (*People v. DeHoyos* (2013) 57 Cal.4th 79, 154.) "Thus, a crime victim can be deemed particularly vulnerable as an aggravating factor 'for reasons not based solely on age,' " including the victim's physical or mental condition, intoxication of the victim, the victim's extreme youth within a given age range, the victim's relationship with the defendant, or the defendant's abuse of a position of trust. (*Ibid.*; see *People v. Garcia* (1985) 166 Cal.App.3d 1056, 1069–1070.) Because victim vulnerability is not an element of the offense of felony child abuse, the trial court did not err when it used E.R.'s unique vulnerability—

namely, the fact he was a defenseless two-month-infant who could not walk, talk, or even move on his own—to aggravate the base term.[3]

The court also did not contravene the ban against the dual use of facts by using the same fact both to aggravate the base term and enhance the sentence. In fact, the court did not use any fact to enhance the sentence. Instead, it struck the punishment for the great-bodily-injury enhancement altogether. Because the court struck the punishment for the great-bodily-injury enhancement, it could use any fact charged and found true for the enhancement as a reason to impose the midterm sentence. (Rule 4.420(g).)

Finally, the court did not double-count Roman's paternal relationship with E.R. in order to find that multiple aggravating factors (the particular vulnerability of the victim (rule 4.421(a)(3)) and the defendant's taking advantage of a position of trust of confidence (rule 4.421(a)(11)) warranted imposition of the midterm sentence. The court did not reference the relationship between Roman and E.R., nor did it mention Roman's status as a father or caregiver, when it found E.R. was a vulnerable victim. Further, there was ample evidence supporting the court's finding that E.R. was a particularly vulnerable victim, separate and apart from the evidence of his filial relationship with his father. As noted, that includes evidence of E.R.'s infancy and his inability to walk, talk, or defend himself against Roman's forceful infliction of violence upon him.

---

[3] In his reply brief, Roman argues for the first time that the particular vulnerability of the victim (rule 4.421(a)(3)) and the defendant's taking advantage of a position of trust or confidence (rule 4.421(a)(11)) are elements of felony child abuse because the felony child abuse statute requires the prosecution to prove, among other elements, the defendant "ha[s] the care or custody of [the] child." (§ 273a, subd. (a).) We do not consider arguments raised for the first time in a reply brief. (*Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 403, fn. 4; *Ko v. Maxim Healthcare Services, Inc.* (2020) 58 Cal.App.5th 1144, 1147, fn. 3.)

## IV

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

IRION, J.