Filed 12/27/23  Alai v. Colton CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| NILI ALAI, | |
| Plaintiff and Appellant, | G061033 |
| v. | (Super. Ct. No. 30-2017-00915715) |
| ROLAND COLTON et al., | |
| Defendants and Respondents. | |
| NILI ALAI, | |
| Plaintiff and Appellant, | G061321 |
| v. | O P I N I O N |
| ROLAND COLTON, | |
| Defendant and Respondent. | |

Appeal from a judgment and postjudgment order of the Superior Court of Orange County, Derek W. Hunt, Judge. Motion for judicial notice denied. Appeal dismissed in part and affirmed in part.

Law Offices of Gloria Juarez and Gloria Juarez for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith and Corinne C. Bertsche for Defendant and Respondent Roland C. Colton.

Colton Law Group and Roland C. Colton for Defendant and Respondent Nahid Birjandi.

Tyson & Mendes, Susan L. Oliver and Nathan R. Berkeley for Defendants and Respondents Hodes, Milman & Liebeck, Daniel Hodes, Jeffrey Milman, Kevin Liebeck and Jason Caruso.

*       *       *

After Nili N. Alai filed and lost a medical malpractice case, she sued her former attorneys. Alai also sued the wife of one attorney, who Alai claimed misrepresented her husband's legal skills and character, among other things. One attorney group–Hodes, Milman & Liebeck LLP, Daniel Hodes, Jeffrey Milman, Kevin Liebeck, and Jason Caruso (collectively, the HML defendants)–prevailed at the demurrer stage. Attorney Ronald C. Colton and his wife, Nahid Birjandi, prevailed at trial. After judgment, Alai unsuccessfully moved for sanctions against Colton.

Alai appeals from the judgment, which encompasses the dismissal of the HML defendants following the sustaining of their demurrer, the judgment in favor of Colton and Birjandi, and the order denying Alai's motion for new trial. Alai filed a second appeal from the postjudgment order denying her motion for sanctions.[1] In her opening brief, Alai also challenges the orders denying her original and renewed applications to disqualify Colton as counsel for Birjandi and the order denying her

---

[1] This court consolidated the two appeals.

2

motion for judgment notwithstanding the verdict (JNOV).

As to the disqualification orders and the JNOV order, we dismiss those challenges for lack of jurisdiction. In all other respects, we affirm the judgment and postjudgment order.

## FACTS

In this case, Alai contends she lost two separate but related lawsuits due to the acts or omissions of her former attorneys, causing her over $14 million in damages. We first summarize the two underlying lawsuits and then discuss Alai's claims against her attorneys and Birjandi in this case.

I. *The 2012 Medical Malpractice Action against Shang*

In 2012, Alai filed a medical malpractice lawsuit against Barbara Shang, alleging Alai contracted an eye infection after an ophthalmology appointment with Shang, *Alai v. Shang*, case no. 30-2012-00591704 (the medical malpractice action). The complaint alleged Alai had contracted the infection due to Shang's failure to maintain the cleanliness of the exam room and sterilize the medical equipment. Alai was represented in the medical malpractice action by four sets of attorneys: Marshall Silberberg, Steven Zelig, the HML defendants, Zelig (again), and Colton. According to Alai, the HML defendants represented her during part of the discovery phase, and Colton's representation included, among other things, handling motions in limine.

In 2014, the trial court issued four orders against Alai. In 2015, Shang moved for terminating sanctions based on Alai's willful violations of those orders. The court denied terminating sanctions but issued evidentiary sanctions excluding any reference to Alai's mother and her medical records, as well as other patient records.

At the hearing on motions in limine, a different judge construed the evidentiary sanctions order as prohibiting Alai from testifying to her observations of Shang's exam of Alai herself and her mother. In opposing this ruling, Colton stated, "Your Honor, quite frankly, if we are not allowed to bring this evidence in, you might as

3

well issue a directed verdict." Colton asked to withdraw from the case, but the court did not allow it. Shang moved for a directed verdict in her favor, which the court granted on April 20, 2016.

## II. *The 2013 Contract Action against Shang*

In 2013, Alai filed a second lawsuit against Shang, *Alai v. Shang*, case no. 30-2013-00669922, a contract action related to the medical malpractice action (the contract action). On June 18, 2015, Alai filed a request for dismissal of the contract action with prejudice.

## III. *The 2017 Action against Alai's Attorneys*

### A. *The Original Complaint through the Fourth Amended Complaint*

On April 19, 2017, Alai filed a form complaint against Colton, the Colton Law Group, Caruso, Hodes, and Hodes, Milman & Liebeck LLP for breach of contract, general negligence, fraud, intentional infliction of emotional distress, accounting, and violation of Business and Professions Code section 6146.

Alai filed a first amended complaint adding Milman and Liebeck as defendants and causes of action for professional negligence, breach of fiduciary duty, and intentional and negligent inference with business and economic advantage, among others. That complaint also split the fraud cause of action into two claims: "constructive fraud and fraudulent concealment" and "intentional and negligent misrepresentation."

While a demurrer and motion to strike directed at the first amended complaint were pending, the parties stipulated to allow Alai to amend the complaint, in part to dismiss the professional negligence claim. Accordingly, the second amended complaint was filed without that claim.

Colton and the HML defendants demurred to and moved to strike portions of the second amended complaint. Rather than rule on the demurrers, the trial court ordered Alai to file an amended complaint of no more than 40 pages. The court noted that "with more than 500 paragraphs and 131 pages," the second amended complaint

4

"strains the limits of reasonableness."

Colton and the HML defendants attacked the third amended complaint as well. The trial court sustained the demurrers and gave Alai leave to amend some of the causes of action.

After Alai filed the fourth amendment complaint (the operative complaint), Colton and the HML defendants once again filed demurrers and motions to strike. As to the HML defendants, the trial court sustained their demurrers without leave to amend, wiping out all remaining causes of action against them (breach of fiduciary duty, fraud by concealment, intentional misrepresentation, negligent misrepresentation, breach of contract, false and misleading advertising, and negligent interference with a business relationship). As to Colton, the court sustained the demurrers to some claims, but overruled the demurrers to the causes of action for breach of contract, fraud by concealment, intentional misrepresentation, and negligent misrepresentation. Subsequently, Alai named Birjandi as a Doe defendant to the operative complaint.

B. *Colton's First Amended Cross-Complaint*

In July 2019, Colton filed a first amended cross-complaint against Alai for intentional misrepresentation, fraud by concealment, negligent misrepresentation, and breach of contract. He alleged Alai made false representations and concealed material information to induce him to represent her in the medical malpractice action.

C. *Pretrial Motions, Trial, and Posttrial Motions*

Over a month before trial, Alai filed an ex parte application to disqualify Colton from representing his wife, Birjandi. It was denied. A week later, Alai filed a renewed application, which was also denied.

Before trial, Colton filed motions in limine, one of which was to exclude irrelevant character evidence under Evidence Code section 352, including evidence of criminal indictments, State Bar reprovals, and bankruptcies. The trial court granted the motion in part, excluding evidence of state bar reprovals that had expired by February 14,

2015, bankruptcies, and criminal charging documents. The court noted felony convictions would be admissible; Colton's counsel replied that "[t]here was no felony," just a 2011 misdemeanor judgment for contempt.

The trial was bifurcated into two phases: liability and damages. During the liability phase, the jury was presented with Alai's claims for concealment, intentional and negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing (the implied covenant), and Colton's cross-claims for the same four causes of action. During trial, the court barred Alai from asking witnesses whether Colton had been convicted of a felony until the court saw certified documentation of a felony conviction. The jury found neither side had proved any claims against the other. After the verdict was rendered, Alai filed a "request for judicial notice that Roland Colton is a convicted felon," with file-stamped copies of court documents. Alai also unsuccessfully moved for a new trial and JNOV, and later for sanctions against Colton.

DISCUSSION

I. *Forfeiture of Issues Not Properly Briefed*

In reviewing Alai's appellate briefs, we faced three glaring deficiencies. First, Alai argued points not stated under separate headings. (Cal. Rules of Court, rule 8.204(a)(1)(B) [party must state each point under separate heading].)[2] Second, she did not support every point by argument, citation of authority, or a pin cite if case authority was provided. (*Ibid.*) Third, she did not support every reference to a matter in the appellate record with a citation to where it appears in the record, either because the citation did not support her reference or there was no citation. (Rule 8.204(a)(1)(C).) The appellate record consists of a 7,090-page clerk's transcript spread over 24 volumes and a 1,250-page reporter's transcript spread over 8 volumes. These figures do not include 2,432 pages of documents in Alai's two motions to augment the record, which

---

[2] All further references to rules are to the California Rules of Court, unless otherwise indicated.

this court previously denied, and 19 pages from her motion for judicial notice.

"Appellate procedural requirements, such as use of headings and citations, must be more strictly enforced as the size of the record grows."  (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 76.)  Thus, to the extent we are unable to follow Alai's legal arguments or locate evidence in the record to support her assertions, we treat those issues as forfeited.  (See *Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 855–856 (*Blizzard*) [forfeiture of points without meaningful argument or citation to authority]; *Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1279, fn. 5 (*Gabrielle A.*) [forfeiture of points without record citations].)

II.  *The HML Defendants' Demurrer*

Alai contends the trial court erred in sustaining the HML defendants' demurrer to the operative complaint because (1) it states viable causes of action for breach of fiduciary duty, intentional misrepresentation, and breach of the implied covenant; (2) these claims are not time-barred; and (3) the court abused its discretion by sua sponte striking the claim for breach of the implied covenant.  We disagree.

A.  *Standard of review*

"We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action.  [Citation.] Construing the allegations in a reasonable manner, we assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice can and have been taken."  (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1010 (*Crouch*).) "'We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons.'"  (*Santa Ana Police Officers Assn. v. City of Santa Ana* (2017) 13 Cal.App.5th 317, 324.)

"'[A]lthough we use a de novo standard of review . . . , we do not transform into a trial court. . . .  Instead, the appellant must frame the issues for us, show us where

7

the superior court erred, and provide us with the proper citations to the record and case law. ""[D]e novo review does not obligate us to cull the record for the benefit of the appellant. . . . As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error . . . by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.""" (*Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 404 (*Crawley*).)

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)

B. *Forfeited claims*

As argued by the HML defendants, Alai has forfeited any challenge to the trial court's sustaining of the demurrers to the causes of action for fraud by concealment, negligent misrepresentation, false and misleading advertising, and negligent interference with business relationship. She failed to identify these claims under a separate heading or subheading in the opening brief. (Rule 8.204(a)(1)(B).) She also failed to provide any meaningful argument and citation to authority for these causes of action. (*Blizzard*, *supra*, 71 Cal.App.5th at pp. 855–856.) Given these failures, we treat Alai's challenges to these claims as forfeited. (*Ibid.*)

C. *Time-barred claims*

We now turn to the remaining three claims to which the trial court sustained demurrers: breach of fiduciary duty, breach of the implied covenant, and intentional misrepresentation. We conclude they are time-barred under Code of Civil

8

Procedure, section 340.6, subdivision (a) (section 340.6(a)).[3]

Section 340.6 governs any "action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services." (§ 340.6(a).) Such claims are timely if "commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (*Ibid.*) All other claims "are time-barred by section 340.6(a) unless the plaintiff alleges actual fraud." (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1229 (*Lee*).) The one- and four-year limitations periods are tolled, however, until the plaintiff sustains "actual injury." (§ 340.6(a)(1).)

Section 340.6(a) is triggered "when the merits of the claim will necessarily depend on proof that an attorney violated a professional obligation—that is, an obligation the attorney has *by virtue of* being an attorney—in the course of providing professional services." (*Lee*, *supra*, 61 Cal.4th at p. 1229.) "[T]he question is not simply whether a claim alleges misconduct that entails the violation of a professional obligation. Rather, the question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation." (*Id.* at p. 1238.) "In this context, a 'professional obligation' is an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the State Bar Rules of Professional Conduct." (*Id.* at p. 1237.)

### 1. Breach of fiduciary duty

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage

---

[3] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

9

proximately caused by the breach." (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.) "The scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct which, 'together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which an attorney owes to his [or her] client.'" (*Ibid.*)

As pleaded, we conclude the claim for breach of fiduciary duty against the HML defendants "necessarily depends on proof" they "violated a professional obligation." (*Lee*, *supra*, 61 Cal.4th at p. 1238.) According to the operative complaint, the HML defendants owed Alai "a fiduciary duty of the highest order" due to "the attorney-client relationship" between them. The operative complaint alleged the HML defendants breached "their fiduciary duty, including those set forth in the California Rules of Professional Conduct," by failing to appropriately, diligently, and competently represent her and "have the requisite legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." They allegedly did this by failing to: "accurately, honestly and fairly represent" Alai in the medical malpractice action and the contract action; "draft a stipulated protective order"; "enforce the protective order"; "timely communicate their intent to cease work" on Alai's cases; conduct and respond to discovery, and file and defend discovery motions; "investigate" the cases; keep Alai apprised of documents, orders, and relevant evidence in the cases; competently draft documents and pleadings; "reasonably consult" on strategy and ways to accomplish Alai's litigation objectives; keep Alai "reasonably informed" of case status; "promptly comply with [Alai's] reasonable requests for information"; and explain "underlying matters to the extent reasonably necessary to permit [Alai] to make informed decisions" about their continued representation in the cases. Subsequent allegations in the operative complaint either gave more specific examples falling within these categories or merely described a category using slightly different words. Accordingly, the breach of fiduciary duty claim is subject to the limitations period of section 340.6(a).

10

Under section 340.6(a), Alai was required to sue the HML defendants "within one year after [she] discover[ed], or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission." (§ 340.6(a).) According to the first amended complaint, Alai discovered the alleged wrongful conduct by February 2015. (See *McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1173 [in demurrer context, court may consider allegations in prior complaints].) The first amended complaint alleged that in February 2015, attorney Zelig emailed Caruso and Hodes, accusing them of malpractice, breach of fiduciary duty, and fraud, and stating he would recommend Alai "immediately begin contacting counsel" to pursue those claims and "all other appropriate legal remedies." Zelig stated Caruso and Hodes had "abandoned" Alai, violated their ethical duties, and ignored answering why they didn't respond to discovery or oppose motions. Zelig noted that when he asked Caruso about outstanding issues, Caruso said "virtually nothing," "concealed key problems," and claimed "key documents were included in the file, but in fact they are nowhere to be seen."

Because an attorney's knowledge of facts is imputed to his or her client (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 798), Alai knew of the HML defendants' conduct by February 2015. She thus had until February 2016 to bring a breach of fiduciary duty claim against them. Alai, however, filed this action in April 2017, over a year too late.

Alai argues that even if the one-year limitations period applied, it was tolled until April 20, 2016, when she first suffered "actual injury" by losing the medical malpractice action. If this were the case, all her claims would be timely because the action was filed on April 19, 2017. This, however, was *not* the case. Actual injury occurs when a plaintiff "suffers an adverse judgment or dismissal in the underlying action" (*Samuels v. Mix* (1999) 22 Cal.4th 1, 11 (*Samuels*)) or when she is "'compelled to "incur and pay attorney's fees and legal costs and expenditures"'" as the result of the

11

malpractice" (*Adams v. Paul* (1995) 11 Cal.4th 583, 591, fn. omitted). As to the contract action, the operative complaint alleged Alai would have prevailed had the HML defendants not breached their fiduciary obligations. By her own admission, Alai suffered harm in June 2015, when she dismissed the contract action with prejudice. As to the medical malpractice action, the operative complaint alleged that the HML defendants' breaches caused her to "pay other attorneys to correct the harm" they caused and that in February 2015 she paid Colton $75,000 to represented her in that case. Because Alai's breach of fiduciary duty claim accrued no later than June 2015 (*Samuels*, at p. 11), the claim is time-barred under section 340.6(a).

### 2. Breach of the implied covenant

Instead of ruling on the demurrer to the contract claim, the trial court struck the claim on its own motion on the ground that Alai had neither previously alleged nor sought leave to add a claim for breach of the implied covenant. We agree with Alai that the court was wrong on both counts. Alai first alleged this claim against the HML defendants in the first amended complaint. And the court, in ruling on the demurrer to the third amended complaint, expressly granted Alai leave to amend the contract claim: "If there are two different contractual relationships, add a cause of action. You're not going to be punished for that." The court's error, however, was harmless because the contract claim, like the breach of fiduciary duty, was time-barred pursuant to section 340.6(a)'s one-year limitations period.

The elements for a claim of the breach of the implied covenant, which is a breach of contract, "'are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'" (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1244.) "The covenant is read into contracts and functions "'as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants)

12

frustrates the other party's rights to the benefits of the contract."'" (*Ibid.*) It "also requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes." (*Ibid.*)

We conclude this claim also "necessarily depends on proof" the HML defendants "violated a professional obligation." (*Lee*, *supra*, 61 Cal.4th at p. 1238.) The operative complaint alleged that the HML defendants agreed to provide legal services to Alai in the medical malpractice and contract actions, the implied covenant required them to "provide those legal services competently and in accordance with the Rules of Professional Conduct and the standard of care for attorneys in California," and they breached the contract by failing to do so. Accordingly, the claim for breach of the implied covenant also is subject to the limitations period of section 340.6(a).

The injury alleged for this claim includes paying attorneys in February 2015 to correct the harm caused by the HML defendants in the malpractice action and losing on the contract action in June 2015. Thus, Alai's contract claim accrued no later than June 2015 (*Samuels*, at p. 11) and is time-barred under section 340.6(a).

3. Intentional misrepresentation

"Actions for actual fraud against an attorney are governed by the three-year statute of limitations" set forth in section 338, subdivision (d). (*Foxen v. Carpenter* (2016) 6 Cal.App.5th 284, 295; accord, *Austin v. Medicis* (2018) 21 Cal.App.5th 577, 588 [applying 3-year period to claim that attorney induced client to retain him by "present[ing] himself as a highly skilled 'top drawer' attorney specializing in 'criminal sex cases' and promised to provide legal services such as pretrial investigation and trial defense that he did not intend to perform"].)

The elements of a cause of action for intentional misrepresentation are a misrepresentation, knowledge of the falsity of the misrepresentation, intent to induce reliance on the misrepresentation, justifiable reliance, and resulting damages. (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.) As relevant here, the test is

13

whether the attorney misconduct is alleged to arise from intentional misrepresentation with the intent to deceive, regardless of whether it also "violated a professional obligation in the course of providing professional services." (*Lee*, *supra*, 61 Cal.4th at p. 1239.)

The trial court sustained the demurrer to the intentional misrepresentation claim, in part, because the alleged misrepresentations occurred after Alai and the HML defendants entered into the retainer agreement.[4] On appeal, Alai contends the operative complaint alleged a misrepresentation *before* the parties entered into the agreement: In July 2014, Hodes misrepresented to Alai "he would immediately investigate the case and understood the time urgency of doing so," but he had no intent to do so and simply wanted to secure a retainer fee. But later on, the operative complaint alleges that on or about July 9, 2014, Caruso misrepresented HML defendants "had negotiated . . . a 'truce' and purportedly obtained an oral stipulation for a full 'truce' with opposing counsel whereby all discovery propounded by both parties was suspended and that all motions were also being withdrawn. However, the HML defendants did not obtain any purported stipulation or 'truce' in writing." This later, specific allegation of a truce negates Alai's conclusory claim that Hodes had intended to deceive Alai. Alai's grievance, thus, was that the HML defendants had failed to memorialize the truce in writing, which if true would establish negligence, not intent to deceive, on the part of the HML defendants.

In addition, the intentional misrepresentation claim fails as to Milman and Liebeck because the operative complaint does not include any allegation they made specific misrepresentations to Alai. (See *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 [complaint alleging fraud must include specific facts showing ""how, when, where, to whom, and by what means the representations were"" made].)

---

4        On appeal, Alai does not argue the trial court erred by disregarding allegations of misrepresentation made after the parties entered into the retainer agreement. Accordingly, we limit our discussion of this issue to alleged pre-contract misrepresentations. (See *Crawley*, *supra*, 243 Cal.App.4th at p. 404.)

14

D. *Leave to amend*

"The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) "To satisfy that burden, the plaintiff "'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading."'" (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 458 (*Rosen*).) On appeal, this burden "'remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend.'" (*Ibid.*)

Nowhere in her opening brief does Alai argue the trial court erred in sustaining the demurrer to the operative complaint without leave to amend. And she fails to state, in her opposition to the demurrer[5] or in her appellate briefs, what facts she would include in an amended complaint that would avoid the application of the statute of limitations or state a cause of action for actual fraud. Although the appellate record includes a proposed fifth amended complaint, which was rejected by the trial court,[6] that

---

[5]  In opposition to the demurrer to the operative complaint, Alai argued leave to amend was required under section 430.41, subdivision (e)(1). Not so. That section provides that a complaint "shall not be amended more than three times [in response to a demurrer], absent an offer to the trial court as to such additional facts to be pleaded that there is a reasonable possibility the defect can be cured to state a cause of action." (§ 430.41, subd. (e)(1).) By the time the court sustained the demurrers to the operative complaint, Alai had already amended her complaint three times, in response to demurrers to the first, second, and third amended complaints. Thus, the court was not required to grant leave to amend under section 430.41.

[6]  The proposed fifth amended complaint appears to be associated with a failed ex parte application for leave to amend. To the extent Alai claims the trial court abused its discretion in denying the application, the claim is forfeited for lack of meaningful argument or citation to authority. (*Blizzard*, *supra*, 71 Cal.App.5th at pp. 855–856.)

15

document, including exhibits, is nearly 200 pages long. The burden is on the plaintiff to prove amendment is a reasonable possibility; this court is not required to wade through the record to discern whether facts supporting amendment are buried therein. (*Rosen*, *supra*, 193 Cal.App.4th at p. 458; *Gabrielle A.*, *supra*, 10 Cal.App.5th at p. 1279, fn. 5.)

In her reply brief, Alai contends the trial court erred in disregarding her "section 473(b) motion attaching the proposed amended complaint." That argument is forfeited for two independent reasons. First, it was made for the first time in reply. (*Gund v. County of Trinity* (2020) 10 Cal.5th 503, 525 [argument forfeited when made for the first time in reply].) Second, the appellate record indicates Alai filed and then *withdrew* the motion for leave to amend under section 473, so the court could not have erred in denying it.

III. *Ex Parte Applications to Disqualify Counsel*

Alai contends the trial court prejudicially erred in denying her ex parte application to disqualify Colton from representing his wife, Birjandi, or in the alternative, for a stay pending review of the denial, and Alai's renewed application to disqualify (collectively, the disqualification orders). Alai argues that Colton's representation of Birjandi at her deposition violated the advocate-witness rule (Rules Prof. Conduct, rule 3.7) and that Alai was prejudiced because Colton's "advocate-testimony was confused as *proof* – and violated Alai's due process because it precluded cross-examination."

We invited the parties to submit supplemental briefs on the issue of whether we lack jurisdiction to consider this challenge. Alai and Colton both did so. After considering the briefs, we conclude this issue is not properly before us because Alai appealed—not from the disqualification orders—but from the judgment and a postjudgment order denying sanctions.

"[O]rders granting or denying attorney disqualification motions are immediately appealable." (*URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 878; see also *Meehan v. Hopps* (1955) 45 Cal.2d 213, 215–218;

16

*Machado v. Superior Court* (2007) 148 Cal.App.4th 875, 882.) "If an order is appealable, an aggrieved party must file a timely notice of appeal from the order to obtain appellate review. [Citation.] A notice of appeal from a judgment alone does not encompass other judgments and separately appealable orders." (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239 (*Sole Energy*).) Simply put, a ruling on a pretrial disqualification motion is not reviewable on appeal from the final judgment. (§ 906 [an appeal from a judgment does not authorize the reviewing court to "review any decision or order from which an appeal might have been taken"]; *Machado*, at p. 885.)

The notice of appeal "is sufficient if it identifies the particular judgment or order being appealed." (Rule 8.100(a)(2).) Where judgments and orders are separately appealable, "'"each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal."' [Citations.]" (*Sole Energy*, *supra*, 128 Cal.App.4th at p. 239.) Alai's first notice of appeal identified the judgment entered on November 15, 2021, which encompasses the "2021 jury trial for Colton Defendants" and the "2019 sustained demurrer for Hodes Dfts." The second notice of appeal identified a postjudgment order entered March 25, 2022, further described as "Post Judgment Orders: Motion for Sanctions (§ 904.1(a)(2); *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 653, 651.)" Neither notice mentioned the disqualification orders. Although notices of appeal must be liberally construed (Rule 8.100(a)(2)), we cannot liberally construe either notice to include the disqualification orders, which were directly and independently appealable. (See *Sole Energy*, *supra*, 128 Cal.App.4th at p. 239 [declining to construe notice of appeal from judgment as encompassing separately appealable new trial order].)

Although Alai acknowledges the disqualification orders were separately and immediately appealable, she argues the notices of appeal sufficiently encompassed the disqualification orders because Colton opposed the issue on the merits and did not

17

object on jurisdictional or timeliness grounds. However, "jurisdiction to review the merits of an appeal can never be conferred upon an appellate court by the consent or stipulation of the parties, estoppel, or waiver." (*In re Marriage of Eben-King and King* (2000) 80 Cal.App.4th 92, 114.)

In sum, because Alai did not file a notice of appeal identifying the disqualification orders and the time to do so has passed, we lack jurisdiction to consider her challenge to those orders. (Rule 8.104(a)(1)(C) [latest potential deadline is 180 days from entry of order].)

IV. *Motion for New Trial[7]*

A trial court has "wide discretion" in ruling on a motion for new trial, and we will not side aside that ruling "'unless there was an abuse of discretion that resulted in prejudicial error.' [Citation.]" (*Crouch*, *supra*, 39 Cal.App.5th at p. 1018.) "In reviewing an order denying a motion for new trial, we review the entire record, including the evidence, and independently determine whether any error was prejudicial." (*Ibid.*)

A. *Evidentiary errors*

Claiming evidentiary error, Alai argues for a new trial against Colton and Birjandi on the intentional misrepresentation and concealment claims. At trial, Alai sought to introduce evidence of Colton's criminal convictions,[8] California State Bar reprovals, and multiple bankruptcy filings, which she claimed he concealed from her but

---

[7] After respondents' briefs were filed, Alai moved to augment the appellate record with 1,845 pages of documents concerning the motion for new trial and JNOV. This court denied the motion, given the obvious prejudice respondents would suffer as their briefings were completed without the additional pages of the record.

[8] On November 15, 2022, this court deferred ruling on Alai's motion for judicial notice of certified copies of records reflecting Colton's 1983 felony judgment and 2011 misdemeanor judgment. The motion is denied. Copies of these records are included in the appellate record, although some of the copies bear different dates for the certification stamps. The date of the stamps are not relevant to the resolution of this appeal.

was required to disclose. Alai argues the court erred in requiring her to produce an official record of conviction before allowing her to examine Colton about it. Alai also contends the court wrongly excluded evidence of misrepresentations by Colton and Birjandi that Colton was exceptionally wealthy, was of the highest character and morality, and had never violated the law. According to Alai, these misrepresentations were not inadmissible character or credibility evidence, but evidence "to establish the substantive elements of her concealment and misrepresentation claims–the very facts that Colton concealed." We disagree.

"We review a trial court's evidentiary rulings for abuse of discretion. . . . Discretion is abused only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.'" (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 (*Shaw*).) "In appeals challenging discretionary trial court rulings, it is the appellant's burden to establish an abuse of discretion." (*Ibid.*)

At the outset, we note that Colton's convictions, bar reprovals, and bankruptcy filings are old. Alai sought to introduce evidence of a 1983 federal felony conviction in which Colton pleaded guilty to aiding and abetting his client's filing of a false tax return, a 2011 federal misdemeanor conviction for contempt, state bar reprovals from 1985 and 2013, which appear to be associated with the federal convictions, and bankruptcy filings from 2013. The trial court ruled "it is my legal conclusion that Colton was not, quote, 'bound' to disclose" these facts about his past.

Although Alai argues Colton had such duty to disclose, she presents no legal authority in support of her position. Instead, she cites cases that stand for the proposition that in the context of a duty to disclose, materiality is an issue for the trier of fact. The issue of materiality, however, is not the same as the existence or scope of a duty to disclose. "The existence and scope of a duty is a question of law for the court to decide," and "[t]he scope of a fiduciary's duty depends on the particular facts." (*Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th

19

1299, 1308–1309.)  As the appellant, Alai has the burden to show how the trial court erred.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).)  She has failed to present any authority to contradict the court's conclusion that a lawyer has no duty to disclose 10-year or older convictions, bar reprovals, and bankruptcy filings to potential or existing clients.

As for the alleged misrepresentations of Colton's wealth, character, and morality, we note the operative complaint did not identify any such misrepresentations. The court therefore did not abuse its discretion in refusing to permit evidence of these issues.  (*Shaw*, *supra*, 170 Cal.App.4th at p. 281.)

B.  *Prejudicial irregularities*

Alai complains of four procedural irregularities that she argues cumulatively justify a new trial.  A new trial may be granted for "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial."  (§ 657, subd. (1).)  However, Alai fails to show either that the alleged irregularities occurred or that she was prevented from having a fair trial.  (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [error is prejudicial if "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error'"].)

First, Alai argues that during closing argument Colton's counsel showed the jury evidence not admitted at trial.  Her only supporting record citation, however, led us to an untranscribed section in the reporter's transcript.  From our independent review of the record, it appears Colton's counsel had shown the jury an unredacted copy of trial exhibit no. 305, instead of the redacted version received into evidence, and the trial court had directed him to "take it off the screen."  Unfortunately, Alai does not point us to–nor could we locate–the redacted and unredacted version of exhibit no. 305.  Without both versions, we cannot determine whether Alai suffered any resulting prejudice.

20

Second, Alai complains the trial court disallowed her counsel from using PowerPoint slides during closing argument. The slides are not part of the record on appeal, so we are unable to evaluate them.

Third, without citation to the record, Alai contends "the court imparted its prioritization of promptness and case dismissal to the jury by directing the jury that if they found for *neither party* on *any* cause of action, they could '*go home*' and not be ordered back weeks later for the damages phase of trial." From our review of the record, the court gave no such direction. Instead, it was Colton's counsel who argued to the jury that if it found Alai failed to meet her burden of proof, "the case is over, we can all ago home."

Fourth, Alai argued that throughout trial and within earshot of the jury, Colton's counsel disparaged both the trial court and her.[9] In support of her new trial motion, Alai offered the declaration of Betty Claycamp, a retired Orange County Superior Court clerk, who stated she attended five days of trial "as an observer." Claycamp declared that on one of those days, shortly after she left the courtroom and entered the hallway, she "witnessed both defense attorneys Roland Colton and Mr. Kjar saying 'the judge is a f***ing idiot', 'he doesn't have a f**ing clue what the f*** he's doing' and 'if he had a f***ing clue we wouldn't still be here dealing with this f***ing s—t'." Claycamp further declared, "Due to the proximity of the jury room from the hallway and the volume of their loudness, I have concerns that the jury could have heard some of this." Claycamp described other similar instances and "believe[d] there could be a likelihood the jury may have also overheard Mr. Kjar's ongoing derogatory remarks directed at [Alai]." For their part, Colton and Kjar denied these accusations. The trial court, in denying the new trial motion, never commented on Claycamp's declaration. We

---

9        Alai also unsuccessfully sought reconsideration of her motions for new trial and JNOV. Her appellate briefing does not challenge the denial of the reconsideration motion, so we do not consider any new arguments raised therein.

thus infer the court rejected this argument either because it found Colton and Kjar more credible or because Claycamp's version of events, even if believed, did not establish that any juror *heard* the disparaging remarks.

C. *The JNOV motion*

Nestled under a main heading that addresses the new trial motion, Alai includes a subheading arguing that the court "should reverse and enter judgment as a matter of law for Alai on her breach of contract claim against Colton." Because Alai cites virtually no legal authority for her argument,[10] the argument she is trying to advance is not immediately clear. Fairly construed, however, Alai appears to challenge the trial court's denial of her JNOV motion. And if so, we lack jurisdiction to consider the issue for the same reasons outlined *ante* in Section III of the Discussion.

Like an order on an attorney disqualification motion, an order denying a motion for JNOV is directly appealable. (§ 904.1, subd. (a)(4).) Alai, however, did not identify this order in either of her notices of appeal. We therefore lack jurisdiction to consider her challenge to the JNOV order. (Rule 8.104; *Sole Energy Co.*, *supra*, 128 Cal.App.4th 212, 239.)

Even if the issue were properly before us, Alai would not prevail on the merits. On appeal, the standard of review for a JNOV motion """"is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion.""""" (*Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 192.) Here, Alai argues the jury should have found in her favor on the contract claim because Colton admitted he didn't refund the unused portion of the retainer fee, a purported breach of the contract.[11]

---

[10]     On this issue, her opening and reply briefs cite to only one case for the proposition that contract interpretation is generally an issue of law.

[11]     Alai also argues Colton admitted to refusing to pay expert costs, another alleged breach of the contract. That argument is forfeited for failure to cite to the appellate record. (*Gabrielle A.*, *supra*, 10 Cal.App.5th at p. 1279, fn. 5.)

But the contract called for a refund only if Colton withdrew before settlement or verdict due to Alai's failure to cooperate with him. Otherwise, he was entitled to keep the unused portion as "compensation for providing services" under the contract. At trial, the jury heard testimony that Colton moved to withdraw in the medical malpractice action, his motion was denied, and the action ended in a directed verdict against Alai. This evidence supports the jury's conclusion that Alai failed to establish Colton was required to return any portion of the retainer fee.

V. *Jury Instructions*

Alai contends the trial court committed three instructional errors: (1) modifying the instruction for breach of the implied covenant (CACI No. 325); (2) "narrowly instruct[ing]" on the misrepresentation claims (CACI No. 1903); and (3) refusing to instruct on felony witness credibility (CACI No. 211). We separately address–and reject–each contention.

"A party is entitled to request that the jury be instructed correctly on any of the party's theories of the case that are supported by substantial evidence. [Citation.] A refusal to instruct the jury is reversible error if it is probable that the error prejudicially affected the verdict." (*Douglas v. Fidelity National Ins. Co.* (2014) 229 Cal.App.4th 392, 408.)

"An appellant has the burden to provide a record sufficient to support its claim of error. [Citation.] Absent an indication in the record that an error occurred, we must presume that there was no error. [Citations.] An appellant arguing instructional error must ensure that the appellate record includes the instructions given and refused and the court's rulings on proposed instructions. [Citations.] If the record does not show which party requested an erroneous instruction, the reviewing court must presume that the appellant requested the instruction and therefore cannot complain of error. . . . '[I]t is incumbent upon . . . appellant . . . to make certain that the trial court has ruled [on a requested instruction] and that the record on appeal discloses that ruling before the

23

alleged ruling may be assigned as error.'" (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 678–679 (*Bullock*).)

### A. *CACI No. 325*

As to CACI No. 325 (breach of the implied covenant), we agree with Colton that Alai has forfeited this issue on appeal. Even if there were no forfeiture, she has not shown prejudice from the alleged error.

At trial, Colton's counsel requested CACI No. 325 be modified to reflect the cross-complaint also contained a contract claim. The trial court read the proposed modification and asked, "Are we okay with the language of this jury instruction?" Alai's counsel responded, "Yes, Your Honor." By accepting the proposed instruction without requesting clarification, Alai "has forfeited the right to argue on appeal that the court misinstructed the jury." (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130.) "'"'In a civil case, each of the parties must propose complete and comprehensive instructions in accordance with his theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion.' [Citations.]" [Citation.] Neither a trial court nor a reviewing court in a civil action is obligated to seek out theories plaintiff might have advanced, or to articulate for him that which he has left unspoken.'"'" (*Id.* at pp. 1130–1131.) "'"'Where, as here, 'the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request *the additional or qualifying instruction in order to have the error reviewed.*'"'" (*Id.* at p. 1131.)

In any event, Alai fails to show prejudice. The special verdict form separated the two contract claims. Under the heading "Complaint," question no. 4 asked whether Alai proved by a preponderance of the evidence that Colton breached the retainer agreement, including the implied covenant. And under the heading "Cross-Complaint," question no. 10 asked whether Colton proved by a preponderance of the evidence that Alai breached the same agreement, including the implied covenant. The

24

jury answered "no" to both questions.  On this record, Alai has not shown the jury was confused by receiving only one CACI No. 325 instruction for both contract claims.

### B.  *CACI No. 1903*

CACI No. 1903, as given to the jury, instructed that Alai and Colton each had a claim for negligent misrepresentation against the other.  The jury was instructed Alai alleged Colton misrepresented certain material facts to induce her to retain him as counsel in the medical malpractice action (and vice versa).  The instruction then set forth the elements of negligent misrepresentation.  Alai contends the trial court erred by limiting the instruction to pre-contract misrepresentations.  According to Alai, she was also alleging Colton made misrepresentations *after* she hired him.   But Alai does not provide—nor could we locate—any record citations showing the language of CACI No. 1903 as it was first proposed and how it was eventually finalized.  Because the record on appeal does not show which party requested CACI No. 1903 as written, we must presume Alai requested it "and therefore cannot complain of error."  (*Bullock*, *supra*, 159 Cal.App.4th at p. 679.)

### C.  *CACI No. 211*

CACI No. 211 instructs a jury on the use of a prior felony conviction to impeach the credibility of a witness.  Because the trial court did not err in excluding evidence of Colton's felony convictions, it likewise did not err in refusing this instruction.

## VI.  *Postjudgment Motion for Sanctions*

After judgment was entered, Alai moved for sanctions against Colton on the ground he falsely represented to the trial court that he had no prior felony convictions. On appeal, Alai argues the court erred in denying her motion.  According to Colton, the issue has been waived, or forfeited, on appeal.  We agree with Colton.

The appellate record does not contain the documents submitted to the trial court on this issue—i.e., the motion for sanctions, opposition, reply, and all declarations,

25

evidence, and other filings that accompanied those briefs.[12]  Alai's failure to ensure a complete record on this issue requires us to affirm the order.  "'"[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed."'"  (*Jameson*, *supra*, 5 Cal.5th at p. 609.)

Even if the appellate record included the missing documents, Alai would fare no better due to the undeveloped arguments in her appellate briefing.  "We are not bound to develop [an appellant's] arguments for [her]."  (*In re Marriage of Falcone & Fyke* (2000) 164 Cal.App.4th 814, 830.)  "Hence, conclusory claims of error will fail."  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

In the opening brief, Alai contends the standard of review is de novo "[t]o the extent that reviewing a sanction order requires the court to construe applicable statutes."  But the brief does not identify any statute on which she bases her sanctions motion.  Instead, Alai discusses evidence of Colton's felony conviction in the 1980's, recites the general law on perjury and subornation of perjury (Pen. Code, §§ 118, 127), and loosely strings together case authorities that do not lead anywhere near Alai's implicit contention that the trial court was required to sanction Colton for committing perjury.[13]  (See *McGinty v. Superior Court* (1994) 26 Cal.App.4th 204, 210 [discussing discovery sanctions]; *Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1164 [interpreting former § 128.5 (Stats. 1994, ch. 1062, § 1, pp. 6395–6396) to permit sanctions for "[b]ad faith tactics in supplemental and reply papers"]; *Chambers v.*

---

[12]  After Colton filed his respondent's brief pointing out these deficiencies, Alai moved to augment the appellate record with 587 pages of documents concerning the sanctions motion.  This court denied the motion.

[13]  Indeed, the trial court did not find Colton committed perjury at all.  At the hearing on the sanctions motion, the court stated, "[I]t wasn't clear to me at the time, nor is it after reading Ms. Alai's supporting papers today, that there was either a demonstrable perjury or a contempt of any, quote, judgment or order or process of the [c]ourt."

26

*NASCO, Inc.* (1991) 501 U.S. 32, 44 [discussing federal court's inherent power to "to vacate its own judgment upon proof that a fraud has been perpetrated upon the court"].)

In her reply brief, Alai refers to the court's inherent power to sanction misconduct and contends generally that "[t]rial courts are empowered by a number of sanctions statutes, including sections 128(a)(5), 128.5 . . . , and 128.7." We have no qualms with this general proposition, but we need not consider it further. Simply put, Alai fails to connect the dots from this general proposition to her conclusion the trial court erred by declining to sanction Colton.[14] (See *In re S.C.*, *supra*, at 138 Cal.App.4th at p. 408 ["conclusory claims of error" may be disregarded].)

---

[14] Alai also contends the trial court abused its discretion because it permitted only five minutes at an in-camera hearing to determine Colton's felony status. Citing to an advisory comment to canon 3.B.(8) of the California Code of Judicial Ethics, Alai impliedly criticizes the court for placing greater importance on disposing of the case "promptly and efficiently" than "fairly and with patience." Alai's record citations, however, do not concern an in-camera hearing. Accordingly, the issue is forfeited. (*Gabrielle A.*, *supra*, 10 Cal.App.5th at p. 1279, fn. 5.)

## DISPOSITION

Alai's motion for judicial notice is denied.  The portion of the appeal challenging the disqualification orders and the JNOV order are dismissed for lack of jurisdiction.  In all other respects, the judgment and postjudgment order denying sanctions are affirmed.  Respondents to recover costs on appeal.


DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


MOTOIKE, J.